Well, I was prepared to talk about the David Kimmel matter first. That's fine. It was the first filing, and we're raising three issues. We say the complaint alleges an actionable right to discharge under 523A2A because of a promise that was made that, well, a promise can't be by itself enough to avoid discharge. Otherwise, almost nothing would be discharged. So what is it about this promise? Of course, it's the genesis of the opinion below that we don't have reliance here. I assert that we have two reliance arguments. The first reliance has to do with the accepted knowledge that one gets rejudicata out of a judgment. Well, that would mean any judgment is not subject to discharge. We know that's not the rule. What Mr. Kimmel gave up then was a right to collect approximately $17,000 a year versus $4,800. And are you a forbearance agreement of any kind, reliance on the promise? Well, that's what rejudicata is. The moment he agreed or the moment the judge entered the order, upon his writ that the most you're going to get is $400 a month, the court says that's it. You're not going to be able to garnish any further wages unless there's a violation of the order. Well, we're kind of skip-hopping over what garnishment is. You can't strip somebody of every dime they have in wages. So all he said was you're getting $400 a month. But he was entitled to under the pleading, under the pleadings before the court. Well, what's the pleadings have to do with anything? The court's going to decide what the bankruptcy code and what the bankruptcy code exceptions to garnishment are going to be. And the court could have given him $20. My understanding is that Mr. Kimmel is obligated to forego 75 percent of his earnings. Well, that may be your understanding, but the point is that he was not going to get necessarily what he asked for. Now, we don't have those ñ I don't have those pleadings in front of me. But are you saying that because you go to a garnish court and say I want $1,700, regardless of what the code says about exceptions to garnishment of wages, you're going to get your $1,700? I'm saying there's a compromise that's entered in here, which is a reliance that he's giving up his garnishment rights the moment the court enters that order. Did you get $1,015, something, $1,015? I'm telling you the difference is $16,000. The client didn't act in reliance on any promise. The court ordered a certain result. It wasn't your client's option to decide, well, I'll agree with the court or I'll not. Where's the fraud? I think that argument is countered by the doctrine of judicial estoppel. You cannot go into court A and say I'm going to pay this man $400 a month and then go into court B and say I'm going to get a bankruptcy discharge on it. I think there's a fraud involved here, a recognized common law problem when you make a promise to somebody. Because, you know, my second reliance issue is a peppercorn reliance. He certainly relied on what was said in that court for a month. Between September 2005 and October of 2005, he was left with the belief he was going to get $400 a month. And he could have entertained further and additional execution matters to enforce the judgment. Let me ask you just a general question. Any creditor can make the allegation, and probably with validity, that he promised he'd pay. There's a debt. There's an obligation. In effect, you're trying to tell me the bankruptcy laws don't exist anymore because any creditor can come in and say, well, he promised to pay, so he should not be eligible to discharge this debt. No, that's not the right answer here. No, that's not the right answer, but I think there's a distinction. When you go in, what is the distinction for this debt? And then you make a promise to pay. And that affects regula con and affects your opportunities following that promise. I want to understand this because maybe I misunderstand what you're saying. Are you saying that your client forego for $400 a month all of the execution on the rest of judgment forever and is going to wait for many, many, many years on the $400? I'm buttressed by the fact that the pleadings before you show no assets other than earnings. That's the only asset he declared. There's no bank accounts. The only way he could get any – based upon the filings of Mr. Kimmel, the only way he could get any satisfaction of his judgment was to attach the earnings. And that was a matter of regula con. Once he said $400 a month, that's it. Well, I read your pleadings to say that the defendant had no intention to perform the commitments to pay the $400. Instead, the promise was made to obtain a settlement of the execution lien. All that tells me is instead of litigating how much the court was going to allow to be taken from wages for garnishment, that you said, I can pay $400, he said, I pay $400, and you said fine. But it's a binding agreement. Once the court says fine on that agreement, he's foreclosed from ever pursuing it for a larger amount. So there's definitely a detriment here, and I say it's also a lien. He's foreclosed from getting more under this garnishment. What if he's stuck? What if the man got a promotion? He now becomes the CEO of the company. He's making $500,000 a month. You're helping me, Judge. That's exactly my point. If that happens, Mr. Roos can't get any part of that increase in salary. He's stuck. Under his own doctrine of regula con. He can't move. He's stuck. So that's his agreement. That's the court's order. Now, that's the first issue. And I want to raise the ñ I do want to point out that the McClellan decision in the Seventh Circuit by Judge Posner certainly expands the type of fraud that one can rely on in obtaining a nondischargeability order. And that raises the second issue before the court, which is the pleadings of fraudulent conveyances. The house that Mr. Kimmel says is his residence in his petition for bankruptcy is in the name of his father. Other similar real estate transactions have taken place. There's the hiding of assets. Now, I'm surprised that the precise issue here is whether a fraudulent conveyance can be brought under the provision of the 523A2. And there's just no question in reading Judge Posner's opinion that, of course, it can. And for some reason, it got shifted back and forth, and nobody's facing the issue. But you have a clear declaration by Judge Posner that if you transfer properties and there's a judgment held by a creditor, there's a cause of action for fraudulent conveyance. And I don't think there's any argument there.  It's a fraud. The Congress hasn't limited fraud under the dischargeability section to actual fraud. It's all kinds of chicanery. And certainly a fraudulent conveyance well-groomed in common law and state law is raised in the federal bankruptcy statute as a nondischargeability. So the real problem here is going ahead with motions to dismiss, you should be following the federal rule of civil procedure that allow one to get the facts. And we were deprived of getting the facts. So there was an attempt to. There were letters written for discovery. And the position was taken, I'm going to throw you out without discovery. So we're into the allegations saying there's definitely hiding of assets with an intent to prevent Mr. Ruse from obtaining a judgment. So this Court is faced now with this task, and I'm sure it will have no problem in saying, of course, 523-828, allow fraudulent conveyance actions to be brought. Now our third issue is the bringing of the wife into this proceeding. Excuse me. I'm certainly entitled to, if I'm right on the fraudulent conveyance, efficiency and liberalization rules regarding pleading allow Mrs. Kimmel to be brought in. She's holding the assets that I say belong to Mr. Kimmel. She's a transferee of his assets. And the race is before the court. And there's no reason, I mean, the well-known rule is that you use, you attempt to follow the federal rules of civil procedure and bankruptcy proceedings. So she's certainly a party to the action, because I'm pleading fraudulent conveyance, and she's the transferee of the fraudulent conveyance. So I think that's all I have to say regarding Mr. David Kimmel. I will proceed then. So when we get to Mrs. Kimmel, that is a state court action. Filed why? Because David Kimmel, in his bankruptcy filings, said I have no assets, no bank accounts, nothing. All I have is my earnings, and actually my expenses are more than my earnings. Well, the trustee in bankruptcy, and I guess this is important, because there's emanations from the cases that perhaps the trustee might have brought some action here. The trustee in bankruptcy gave Mr. Roos a post-nuptial marital agreement. The bankruptcy gave him the post? The bankruptcy trustee, yes. The trustee himself. How did he do that? I guess I assume. I don't know. I assume Mr. David Kimmel gave him the agreement, and he gave it to Mr. Roos. So, misconduct. Hey, come on. A creditor is entitled to use the sanctuary of the fraudulent conveyance statute when a marital agreement is entered into? There was some question about that, I guess, but the California Supreme Court said I'm sorry, but uniform fraudulent conveyance acts trump marital agreements. We're not going to deprive creditors of any hanky-panky going on between couples. That's binding. That's a California Supreme Court case. Mejia. So we find in California a bank going into California court under the Uniform Fraud and Conveyance Act and saying I want the house of the wife because it was transferred before the husband filed bankruptcy. Of course, the wife argues the trustee should have this action, not the creditor. Not in California. There's abandonment. There's a home that should have been listed and was not, and the bank can get the house. Well, in her prior bankruptcy, did you object to the discharge she got in her Chapter 7? That raises an interesting report, Your Honor. How could he file an action raising a postnuptial marital agreement, which is not entered into the date of the filing of the wife's bankruptcy? The wife in her bankruptcy papers say it's probable that my husband owes the debts of $4 million. And I don't have any income. I have no bank accounts. Now, what the court has to decide is are you going to allow the first wife to say I have no assets and the husband, the second bankruptcy, to say I have no assets, when in fact there are assets that are sufficiently important to enter into a postnuptial marital agreement and by allowing that agreement to be consummated without discovery, without knowledge of the facts, you have the husband's ability to file bankruptcy in the first place. We don't know how many assets he's hiding with the wife. So you cannot transform, and this is the fundamental error of the opinion below, you cannot transform an injunction into a categorization of assets. All an injunction says, certain actions are prohibited. That's all it says. It doesn't allow a husband to not schedule assets that are part of the bankruptcy estate. There's just no way. I think, you know, it goes back to logic. There's ways you can define things. One is conceptual, normative, and the other is operational. If you take an operational definition of what the injunction statute is all about, all it is is what injunction statute are you talking about? The whole thrust of the opinion of the learned court below is that if the creditor goes into court and asks for remedies concerning wages, he's enjoined from doing so. Well, the opinion is a little more complex than that. I mean, that's certainly the first sentence. That's what he's saying. So you say that his opinion was wrong. There's no way a court is going to let the second married person file a no-asset bankruptcy when he's entered into a post-nuptial marital agreement because you're able to fraud all creditors, not the creditor with the injunction prohibition, but all creditors because you're hiding all the assets in the name of the wife. So obviously the courts aren't going to permit that, and that's what we have here precisely. The filings of the two parties are before the court in the Roberta Kimmel pleadings. Now, I want to touch two more matters. You've used 18 minutes so far, so keep up. All right. All right. One more matter, waiver. Supreme Court in Mar-a-Mar completely disposed of the waiver argument. Misconduct doesn't allow waiver. Waiver only arises when the creditor enters into some kind of agreement. You're not going to enter into any rights beyond our agreement. Thank you, Your Honor. Mr. Warner? Your Honors, let me start with the premise that Mr. Roos's claim is not the $400 a month. His claim is a judgment, which was entered in state court in 1995. Let's talk about the waiver now. She filed ñ let me get the dates right. The lawsuit was filed in 1991. The wife files for bankruptcy in 1993. She gets a discharge. There was never any objection to her discharge. There was never any claim by Mr. Roos that her obligation to him was non-dischargeable. She got a clean, unfettered discharge. Finally, in 1995, the judgment is entered. And then it's not against the wife, but it's against the husband, David. So over the next few years, there's money paid, I assume so much a month, by David to hold off the enforcement of the judgment. Keeping in mind, it's not the money that's being garnished that's the claim, it's the judgment that's the claim. In 2005, David files Chapter 7 bankruptcy. He gets a discharge. That's after the garnishment of his wages. Correct. Correct. And all that happened was we have an existing judgment, which if you can enforce it, you can levy on whatever you can find. Exactly. They found that he has wages, so under the state garnishment laws, he attempted to get part of the wages. And did, apparently, $400 a month. He got $400. I mean, the judge might have given him five, I don't know, three, who knows. But he said, I can pay, I have expenses, I'll pay you four. And he said, fine. And during all that time, the creditor, if he wanted to, could go after the wife under some kind of fraudulent transfer, you know, as part of a judgment enforcement proceeding. Didn't do that. But in any event, under the bankruptcy procedure, a Chapter 7 debtor, there is a time frame, I think it's Rule 4007, that says you have 60 days from the date of the first meeting of creditors. It's called the bar date. And when they send out the notice to creditors, it's in bold type. Bar date is such and such. And they have a specific date. You don't have to calculate it. It's there. And that's the date, that's the deadline for doing two things. Either claiming your debt, your debt, in this case the judgment, is nondischargeable because it arose out of some kind of fraud. Or under 5 under 727, you are objecting in general to the discharge because, for example, nondisclosure of assets or some other kind of defalcations within the bankruptcy setting. They did not meet the deadline for 727. So their objection to discharge, no good. Untimely, they never tried to go around that deadline. They never tried to apply to get relief from the deadline. That claim, nondischargeable, gone. So we're only left with one issue, and that is, was there some kind of fraud arising out of the State court judgment in 1995 that would make that claim nondischargeable? This is the 523A, I think it's 2. And what Judge Montali, who was the bankruptcy judge here, said, repeatedly, because we kept filing motions under 12d6 requiring specificity as to what the fraud was, he gave them like four chances to specify the fraud. And they never did. They never could say what was fraudulent about that State court judgment. And they never pleaded that. End case. Kennedy. As I read the complaint, I had it open earlier, it sounds like the fraud was the fact, gee, we went to garnish wages. I promised he promised to pay 400. He never intended to promise to pay 400. So it's fraud. It had nothing to do with the judgment. It sounds like it has something to do with maybe, maybe not paying garnished wage amounts. I mean, are they claiming in this case $400 that they didn't get? Is there anything else in the complaint that alleges? It seems to me it's centered on that $400. Yes. But I don't see how that, again, they haven't specified exactly how it was fraudulent. You know, what was fraudulent about that? I think the argument is that the court order saying $400 was induced by the representation that he'd pay $400. I mean, the court hit upon that amount in a context where if he'd known the person planned to pay for a few months and then stop, he would have ordered something different. But that's what presumably is behind the judicial estoppel argument. Yes. But that only would make sense if you could allege that Kimmel had a great deal more ability to pay more than $400 a month. Like one of you raised the issue of the 500, the salary of $500,000 a year. But that doesn't, there aren't any facts that support that contention. Well, and then the estoppel, I don't know what your thought of the estoppel is, but I think counsel said that he could only forever get $400 out of his wages. So even if that's so, I don't know where the fraud is other than the fact that somehow he's estopped from collecting the whole amount of the debt, so therefore the debt is fraudulent, when in fact the debt was based upon some construction business and we don't even know what the basis of it is. There's no evidence to the effect that the barnishment agreement, whatever that was, prevented them from pursuing other creditor remedies. There was, it's like a typical garden variety wage garnishment. Well, and I don't know California exactly, but garnishment things are open. I mean, if you get more wages, just like alimony, you go get more if the alimony is open. Exactly. I mean, it's. But, but, so as far as you're concerned, there's nothing else in the complaint that says anything about fraud? No, nothing. I mean, that's the whole problem here. You've got to keep going back to what is the claim. The claim is the judgment. That was entered in 1995. And they keep talking about fraudulent transfers and so forth. Well, but they do have, in paragraph 8 of the complaint, they say the statements and acts of defendants are but part of a plan and scheme to fraudulent deprive plaintiff of full payment of judgment. So I guess that's supposed to subsume the 400 I'm never going to pay you when I told you I was into a plan and scheme of fraudulent to deprive them of all full payment of the judgment. So this, I think, is where, is this where the judge said, wait a minute, you have to plead with particularity. Yeah. I mean, exactly. What are you talking about? Well, I mean, they talk about a continuous scheme to fraudulently intentionally hide substantial assets. Again, it, it, the scheme in that, I don't know that I ever found anything in here where that was pled with any more particularity. But wouldn't that be true, one of you said, wouldn't that be true in any bankruptcy setting, some creditor would come in and say that just to get around the, the discharge problem? I mean, that, to me, is, you know, it's exactly what we're trying to prevent from happening. If you have a nondischargeable claim and you're saying your debt, forget about objections to discharge, your debt is nondischargeable because it was induced by fraud. Was the judgment, was the underlying facts that led to the judgment induced by fraud? No evidence of that. Underlying facts are not clear enough to know what the minutiae was. Was it injury to the asset is created by fraud, or was it an act of damage to property, willful damage to property, I think it's 523a6, or something like that. But that's not been pleaded here. Their whole case is some form of unspecified fraud. And you cannot sustain a nondischargeability complaint on the basis of those vague kinds of allegations. Well, would you admit this, that if you lawyer right and the bankruptcy law gives you certain remedies and you achieve those remedies, that somehow you get results that some people don't like? Well, for instance, trying to garnish the wife's wages or go after the husband's community property and the wife's wages was barred by the Bankruptcy Act because of her prior discharge. Now, that might sound like it's really wrong, but that's what the law provides. And apparently, I assume your argument is that the debtors in this case lined everything up properly in the bankruptcy code. I mean, that was the five, I think it's section 524. 524. Yeah. And then, you know, whether you like it or I like it, it's there. It may be harsh, but in the ultimate wisdom of the legislature in making these social and economic decisions in the code, they said the community asset can be shielded if you do these things. I go back to my first argument, which is what's the underlying claim? It's a judgment. And the wife is off that judgment. She got a discharge. And so they're only – and their objection to discharge, no good, untimely. So the question is what about that underlying state court case that was fraudulent? They didn't plead with that. And therefore, the bankruptcy court in the David Kimmel case clearly was correct in its conclusion. Is there anything different you want to tell us about the Roberta Kimmel case? In the case of Roberta, it's the same thing. She got a discharge. 524 protects her subsequent acquired assets, including community property. And this whole story about fraudulent conveyance relating to a marital agreement that took place 13 years ago or 11 years ago, there's a statute of repose in California that's a seven-year statute that ran a long time ago. So she – I don't see how any liability on her part, period. If we have your argument, thank you. A few brief points, Your Honor. Opening up the creditor can go after other assets. In the light of the filing, there are no other assets. They're all in the name of the wife. So I don't know how counsel raises it. All right. No objection to discharge. Of course, we didn't know what the prospective intents of the parties were, that they were going to enter into a post-nuptial agreement. I do want to point out a very significant thing here. Before the bankruptcy case is closed, 1997, Roberta Kimmel enters into this agreement as to property in which she tells the bankruptcy court, I have no assets. I live with – depend on my family. My husband doesn't support me. Enters into a post-nuptial model agreement in 1995 after the case is closed. I think there's some disturbing problems. Now, I have to say this because of the case before you, but the no objection to discharge raises this question of reopening. This case is reopened. Okay, Mr. Keith, you've had your 20 minutes. Thank you. Thank you. The two cases just argued are both submitted for decision. The next case on today's calendar is submitted on the briefs. That's Nichols v. Whipple. So we will move to Charles and Schwabenko v. Beccaro v. Chandler.
judges: Brunetti, Clifton, Archer